UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| TARA B., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:22-CV-065-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KILOLO KIJAKAZI, *Commissioner of* | ) | **AND ORDER** |
| *Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Commissioner of Social Security denied Plaintiff Tara B.'s ("Plaintiff's") application for Supplemental Security Income and Disability Insurance benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). [R. 1]. Both Plaintiff [R. 14] and the Commissioner [R. 18] have filed their respective briefs. For the reasons that follow, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. The Court will therefore affirm the Commissioner's decision.

## I.     Background

Plaintiff is 47 years old and has a high school education. [Tr. 153, 157]. She is presently unemployed but has past relevant work experience as a general manager in an assisted living facility from February 2000 to March 2004 and a home health aide from March 2004 to September 2004. [Tr. 157]. Plaintiff was "self employed" "through the state" from April 2004 to June 2010 before serving as a home health aide again from August 2010 to June 2012. *Id.*

Plaintiff protectively filed an application for Supplemental Security Income ("SSI")

benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (the "Act") on June 6, 2012, [Tr. 134], and an application for Disability Insurance benefits ("DIB") under Titles II and XVI of the Act on August 28, 2013, [Tr. 151]. Plaintiff alleges disability beginning on June 4, 2012 due to depression, fibromyalgia, "mental break down," migraines, "all over pain," asthma, "right knee is bone to bone," "nerves," "lower back," and acid reflux. [Tr. 153–56].

Plaintiff's applications were denied at the agency level and, following a hearing, an administrative law judge found Plaintiff not disabled on April 23, 2014. [Tr. 6–19, 32–91]. Plaintiff sought judicial review of that decision, and on August 15, 2016, the United States District Court for the Northern District of Ohio reversed the final decision of the Commissioner and remanded Plaintiff's case for further proceedings. [Tr. 711]. The same administrative law judge held a second hearing and again issued an unfavorable decision on May 17, 2017. [Tr. 590–635]. On review, the Northern District of Ohio remanded Plaintiff's case for a second time [Tr. 2583–84], and the Appeals Council then reassigned Plaintiff's case to a new administrative law judge [Tr. 2579–80]. In doing so, the Appeals Council observed that Plaintiff had filed a subsequent SSI application on October 26, 2018, which it consolidated with Plaintiff's earlier applications. [Tr. 2579].

Due to the COVID-19 pandemic, Administrative Law Judge Deborah F. Sanders ("ALJ Sanders") held telephonic hearings on Plaintiff's claims on July 14, 2020 and April 15, 2021. [Tr. 2482–514]; [Tr. 2515–559]. Plaintiff participated in both hearings and was represented by attorney Clifford M. Farrell. [Tr. 2427]. ALJ Sanders issued an unfavorable decision on June 22, 2021. [Tr. 2424–67].

Plaintiff's insured status under Title II expired on June 30, 2012, her "date last insured." [Tr. 146]. Consequently, the relevant period for Plaintiff's DIB claim under Title II ran from her alleged onset date of June 4, 2012 through her date last insured, June 30, 2012. *See* 20 C.F.R. §§

2

404.130–31; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). For her SSI claim and her DIB claim under Title XVI, however, Plaintiff had to show she was disabled while her applications were pending. *See* 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330, 416.335. Thus, the relevant period for those claims ran from the date of her first application on June 5, 2012 through the date of ALJ Sanders's decision on June 22, 2021. [Tr. 69, 83, 2467]. For these reasons, in applying the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), ALJ Sanders separately considered each relevant disability period before and after Plaintiff's insured status under Title II expired.

First, ALJ Sanders found Plaintiff has not engaged in substantial gainful activity since June 4, 2012, her alleged onset date. [Tr. 2431]. Then, for the period of June 4, 2012 through June 30, 2012, ALJ Sanders found that Plaintiff had the severe impairments of migraine headaches, fibromyalgia, osteoarthritis of the right knee, obesity, depressive disorder, and anxiety disorder. [Tr. 2431–32]. Third, during that period, none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. [Tr. 2432]. ALJ Sanders then determined Plaintiff had the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [C]laimant could frequently push/pull and frequently operate foot controls with the right lower extremity. She could frequently kneel and crawl. The claimant could frequently climb ladders, ropes, and scaffolds. She could perform simple, routine, repetitive tasks not at a production rate pace and without strict production quotas. She could adapt to occasional changes in the work setting. The claimant could have occasional interaction with supervisors, coworkers, and the public.

[Tr. 2434]. Fourth, ALJ Sanders found Plaintiff would have been unable to perform her past relevant work during that period considering her RFC. [Tr. 2439]. Fifth and finally, from her alleged onset date through her date last insured, considering Plaintiff's age, education, work

experience, and RFC, ALJ Sanders determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [Tr. 2440].

Turning to the period of July 1, 2012 through June 22, 2021, ALJ Sanders found that Plaintiff had the severe impairments of migraine headaches; osteoarthritis/degeneration of the knees, right worse than left; asthma/chronic obstructive pulmonary disease (COPD); degenerative disc and joint disease of the spine, chronic pain syndrome, status-post spinal surgical intervention; fibromyalgia; lymphadenopathy; morbid obesity; depressive disorder; and anxiety disorder. [Tr. 2441]. For that period, ALJ Sanders again found that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* ALJ Sanders then found that Plaintiff had the RFC to perform "light work" with the following limitations:

> [C]laimant could frequently push/pull. She could frequently operate foot controls with the right lower extremity. The claimant could frequently climb ramps and stairs. She could frequently kneel, crouch, and crawl. The claimant should avoid climbing ladders, ropes, and scaffolds. She could have occasional exposure to irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas. The claimant should avoid working in a nose environment above a level 3 as defined by the DOT or companion resources. The claimant should avoid working in industries with excessive vibration, such as jackhammering. The claimant could perform simple, routine, repetitive tasks not at a production rate pace and without strict production quotas. She could adapt to occasional changes in the work setting. The claimant could have occasional interaction with supervisors, coworkers, and the public, but could not perform tandem or shared tasks with coworkers, could not have over the shoulder supervision, and could not work with the public in a customer service capacity.

[Tr. 2444]. For this period, ALJ Sanders found Plaintiff would have been unable to perform her past relevant work during that period considering her RFC. [Tr. 2465]. However, for the period of July 1, 2012 through the decision date, considering Plaintiff's age, education, work experience, and RFC, ALJ Sanders determined there are jobs that exist in significant numbers in the national economy that she can perform. [Tr. 2466].

Based on this evaluation, ALJ Sanders concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any point from June 4, 2012 through the date of the decision. [Tr. 2467]. Plaintiff sought review of ALJ Sanders' decision, and the Appeals Council declined review on June 14, 2022. [Tr. 2417]. At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. [R. 1].

## II.      Standard of Review

"When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may 'not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.'" *McNabb v. Colvin*, No. 3:16CV-00298-DW, 2017 WL 489421, at *2 (W.D. Ky. Feb. 6, 2017) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (same). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## III.      Analysis

Plaintiff challenges ALJ Sanders's residual functional capacity ("RFC") determinations for each relevant disability period. [R. 14, pp. 9–16]. The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Plaintiff claims ALJ Sanders failed to properly evaluate the opinions of state agency psychological consultants both before and after the date Plaintiff was last insured. [R. 14, pp. 9–16]. Her arguments are substantively the same, however, and Plaintiff acknowledges that she "again raises the same issue" with respect to each relevant period—that ALJ Sanders "failed to properly address the superficial limitation and neglected to account for or address the opinion restricting [Plaintiff] to a work environment with less than 5 people." *Id.* at 14.

The Commissioner responds that ALJ Sanders appropriately considered the psychological consultants' opinions and afforded them "some weight." [R. 18, p. 7]. In addition, the Commissioner points out that "Plaintiff mistakenly asserts that [the consultants] also assessed an RFC limitation to being around no more than five people at a time, which Plaintiff then claims the ALJ erroneously failed to mention," when the experts, instead, "assessed no such limitation, as they were merely noting Plaintiff's own allegation regarding social functioning." *Id.* at 6.

The regulations applicable to claims for disability benefits filed on or after March 27, 2017, i.e., the new regulations, changed the way the Commissioner considers medical opinion evidence. *See* 20 C.F.R. § 404.1520c (2017). Because Plaintiff's claim was protectively filed before March 27, 2017, the "old regulations" apply. The old regulations established a hierarchy of acceptable

medical source opinions. *Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 577, 582 (S.D. Ohio 2015). Treating physicians top the hierarchy. *Id.* The so-called "treating physician rule" requires a treating physician's opinion be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record. 20 C.F.R. § 404. 1527(c)(2). ALJs are required to give "good reasons" for the weight assigned to a treating source's medical opinion. *Id.* Under the old regulations, "only 'acceptable medical sources' [could] be considered treating sources . . . whose medical opinions may be entitled to controlling weight." Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (citing 20 C.F.R. § 404.1527(c)(2)).

Examining physicians, who often see and examine a claimant only once, are next in the hierarchy, followed by non-examining physicians' opinions at the bottom. *Hollon*, 142 F. Supp. 3d at 582. Opinions from non-treating sources, like examining or non-examining physicians, are never assessed for controlling weight; instead, they are evaluated using the factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These factors include the examining relationship (or lack thereof), specialization of the physician, consistency of the medical opinion with the record, and supportability of the opinion. 20 C.F.R § 416.927(c)(1)–(6). An exhaustive factor-by-factor analysis is not required to comply with the regulations. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Generally, the more consistent an opinion is with the record as a whole, the more weight an administrative law judge will give to that opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Here, ALJ Sanders afforded the psychological consultants' opinions "some weight," as she found them consistent with and supported by the record evidence. [Tr. 2438]. Specifically, ALJ

Sanders assessed their opinions as follows:

> The State Agency mental findings evidenced within Exhibits 1A and 3A noted the claimant had severe mental conditions and cited the claimant could follow written instructions pretty good and spoken not good; could carry out simple routine tasks with some variation in pace and regularity and at times repeated instructions; could interact in a brief and simple superficial manner; and could adapt to minor expected changes. Here, the undersigned has not adopted the prior mental findings verbatim. The undersigned notes the prior findings were in part based upon the claimant's subjective reports/statements. The prior findings also used vocationally irrelevant undefined terms, for example, the prior findings used the term "superficial" without a vocational definition.
>
> While the undersigned has not adopted the findings verbatim, the undersigned does find the prior findings consistent with the record, in that the medical evidence of record during this time supported severe mental conditions and limitations in each area of functioning. The undersigned finds the claimant's breakthrough symptoms of depression and anxiety, including slow speech and low energy, as well as mood fluctuation supported limitation in the areas of understanding/applying/remembering information as well as concentration/persistence/pace. The undersigned finds the claimant's intermittent sad demeanor, slow speech, and downcast presence, as well as her report of increased symptoms in social situations, supportive of limitation in social functioning. The undersigned finds the claimant's need for routine medication management and counseling intervention supportive of adaptive limits. Thus, while not adopted verbatim, for the reasons discussed herein, the undersigned affords some weight to the prior mental findings.

[Tr. 2438–39]. ALJ Sanders found that medical evidence from each relevant disability period supported severe mental limitations. *See* [Tr. 2465]. Notwithstanding, because ALJ Sanders also found that the psychological consultants' findings were based in part on Plaintiff's "subjective reports/statements," she declined to adopt them verbatim. [Tr. 2438–39, 2465].

As Plaintiff acknowledges, *see* [R. 14, p. 11], "an ALJ need not adopt a medical opinion verbatim, even if he found it persuasive." *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *3 (W.D. Ky. Mar. 29, 2022). Even so, ALJ Sanders crafted an RFC that largely tracks the state agency consultants' findings. ALJ Sanders' RFC findings incorporated the consultants' assessed limitations regarding task complexity and Plaintiff's ability to adapt to

8

changes. *See* [Tr. 62, 64–66, 75, 77–80, 2434, 2444]. For example, considering the consultants'
opinions that Plaintiff should be limited to simple, routine tasks with limited variation in pace and
regularity and at times repeated instructions, ALJ Sanders limited Plaintiff to simple, routine, and
repetitive tasks not at a production rate pace and without strict production quotas. *See id.* Similarly,
with respect to the consultants' findings that Plaintiff could adapt only to minor, expected changes,
ALJ Sanders limited Plaintiff to only occasional changes in the work setting. *Id.*

Although ALJ Sanders clearly accounted for many of the psychological consultants'
findings, Plaintiff still suggests it was error for ALJ Sanders not to incorporate the consultants'
specific finding that Plaintiff could only "interact in brief simple superficial manner." [Tr. 66].
ALJ Sanders noted that the term "superficial," as relevant here, lacked vocational definition. [Tr.
2438, 2465]. Even so, ALJ Sanders incorporated the consultants' findings and, using language she
considered vocationally relevant, found that for both relevant disability periods, Plaintiff could
have occasional interactions with supervisors, coworkers, and the public. [Tr. 2434, 2444]. For the
period following Plaintiff's date last insured, ALJ Sanders further found that Plaintiff should be
limited to "no tandem or shared tasks, no over-the-shoulder supervision, and no customer service
work." [Tr. 2444]. These limitations fairly account for the consultants' assessment of "brief" and
"superficial" interaction. *See Cf. Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL
2841707, at *12 (N.D. Ohio Feb. 3, 2020), report and recommendation adopted, No. 3:19-CV-
1243, 2020 WL 2839654 (N.D. Ohio June 1, 2020) ("[T]he Court agrees with the Commissioner
that the ALJ's limitation to no team or tandem tasks is a qualitative limitation on social interaction
and adequately addressed . . . superficial interaction with others.") (citation omitted).

Plaintiff acknowledges that "superficial," in this context, is not defined by the agency or
by the Dictionary of Occupational Titles (DOT). [R. 14, p. 12]. And despite ALJ Sanders's clear

consideration and reconciliation of the consultants' use of the phrase "superficial interaction," Plaintiff contends ALJ Sanders "entirely disregard[ed] the superficial interaction limitation because the ALJ claimed it was undefined." [R. 14, p. 12]. Plaintiff cites to *Hummel v. Comm'r of Soc. Sec.*, noting, "[c]ourts routinely recognize that limiting the quantity of time spent with an individual does not accommodate a limitation relating to the quality of the interactions—including a limitation to 'superficial' interaction." Case. No. 2:18-cv-28 (S.D. Ohio, Mar. 13, 2020); *see also Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations to 'superficial' interactions."). Indeed, consistent with the cases Plaintiff cites, ALJ Sanders *did* account for both the qualitative and quantitative implications of the consultants' finding that Plaintiff could only "interact in [a] brief simple superficial manner." [Tr. 66]. First addressing the quantity of time Plaintiff could interact socially, ALJ Sanders limited her to only "occasional" interactions with supervisors, coworkers, and the public. [Tr. 2434, 2444]. And with respect to the quality of Plaintiff's social interactions, she limited Plaintiff "no tandem or shared tasks, no over-the-shoulder supervision, and no customer service work." [Tr. 2444]. The Court finds no error.

As a closing note on this issue, specifically with respect to ALJ Sanders's RFC determination for the first disability period, Plaintiff contends the finding that she could have only occasional social interaction does not sufficiently account for the psychological consultants' qualitative limitation to only "superficial" interactions. [R. 14, pp. 11–14]. The Court disagrees, first, because this limitation, on its face, is sufficiently qualitative. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (citation omitted) (finding that ALJ accounted for state agency consultants' opined limitation relating to "a few familiar others on a superficial basis" with

10

an RFC allowing "only occasional interaction with the public"). Second, ALJ Sanders sufficiently explained the weight she gave the consultants' opinions for the first disability period and why she only incorporated some of their findings, as required by the regulations. ALJ Sanders observed that, during the period prior to Plaintiff's date last insured, her mental symptoms were generally well controlled with conservative treatment, that Plaintiff herself reported in July 2012 that she was able to grocery shop for more than three hours and could get along with authority figures, and Plaintiff's admission that she had never lost a job due to issues getting along with others. [Tr. 2436, 2437].

Finally, the Court agrees with the Commissioner that even if ALJ Sanders erred in assessing Plaintiff's social limitations in the RFC for the first disability period, any such error was harmless. Indeed, an impartial vocational expert testified during the administrative hearing that even with the more restrictive mental limitations ALJ Sanders outlined in Plaintiff's RFC for the second disability period, such restrictions would not preclude Plaintiff from performing a significant number of jobs in the national economy. [Tr. 2440–41, 2466–67, 2501–03, 2511]. Thus, even if ALJ Sanders had assessed additional mental limitations in the first RFC, it would not have resulted in a favorable decision.

Plaintiff also claims ALJ Sanders erred in failing to "mention[] or discuss[]" her "need to not be around more than 5 people." [R. 14, p. 12]. On this point, the Court agrees with the Commissioner that the consultants assessed no such limitation. Rather, explaining Plaintiff's social limitations "in narrative form," as prompted by the form used by the consultants, they provided:

> 6/18/12 MD Friendly, fully communicative, casually groomed. Demeanor sad. Appears listless and anergic. Appears downcast. Speech and thinking appear slowed by depressed mood. May distract coworkers and the []general public to some extent. She is nervous and cannot be around alot [sic] of people like more than 5. Alleges she gets along okay w/ authority.

Can interact in brief simple superficial manner.

[Tr. 66, 79].[1] The portion of the form concerning Plaintiff's inability to be around "more than 5" people quotes directly from her July 2012 function report, in which she states, "I'm very nervous + can't be around alot [sic] of people like more than 5." [Tr. 170]. Importantly, the "narrative form" paragraph quoted above is intended to "[e]xplain . . . the social interaction limitations indicated above," [Tr. 66], which includes the consultants' findings that Plaintiff is "moderately limited" in her ability to interact appropriately with the general public, "not significantly limited" in her ability to ask simple questions or request assistance, not limited in her ability to accept instructions and respond appropriately to criticism from supervisors, "moderately limited" in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and "not significantly limited" in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, [Tr. 65]. The *explanation* for these limitations, which included Plaintiff's own allegation that she cannot be around "more than 5" people, is not itself a limitation, and ALJ Sanders did not err in failing to include it in her RFC determination.

To the extent the consultants did assess Plaintiff with such a limitation, ALJ Sanders did not err in declining to adopt that portion of their assessment, which was based on Plaintiff's subjective allegations. A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the limitation

---

[1] This identical assessment is included twice in the consultants' reports; the first time this assessment appears is signed by Dr. Mel Zwissler, [Tr. 66], and the second is signed by Dr. Robyn Hoffman [Tr. 79].

alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of symptoms, medication taken and any resulting side effects, and any other curative measures taken. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3). Considering the objective medical evidence of record, ALJ Sanders appropriately decided not to include the extreme limitation that Plaintiff could not be around more than five people at one time.

After reviewing the opinions of the state agency consultants and the record as a whole, the undersigned finds that substantial evidence supports ALJ Sanders' decision not to adopt their opinions verbatim though they are consistent with other evidence in the record. ALJ Sanders did incorporate a significant number of the consultants' findings and accounted for all limitations supported by adequate medical proof. And, as a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there might be evidence in the record that would support a contrary conclusion, ALJ Sanders thoroughly considered the evidence and appropriately incorporated the state psychological consultants' opinions. The Court finds no error in ALJ Sanders's decision.

**IV. Order**

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

This the 29th day of June, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Copies:        Counsel of Record